**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

NORTHSTAR TRANSITIONS, LLC, and 1236
RIDGE ROAD, LLC

               Plaintiff,

                  v.

BOULDER COUNTY, STATE OF
COLORADO, a political subdivision of the State
of Colorado

               Defendants.

---

**VERIFIED COMPLAINT**

---

Plaintiffs NorthStar Transitions, LLC ("NorthStar Transitions") and 1236 Ridge Road,

LLC ("1236 Ridge Road") (together, "NorthStar" or "Plaintiffs") bring this action against

Defendant Boulder County, State of Colorado ("Boulder County" or "Defendant") for violations

of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, the American with Disabilities Act

("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973 (the "Rehabilitation Act"),

29 U.S.C. § 794, the Equal Protection and Due Process Clauses of the Fourteenth Amendment of

the United States Constitution, the Equal Protection and Due Process protections guaranteed by

Article II, Section 25 of the Colorado Constitution, and Colorado Revised Statute § 30-28-115.

NorthStar challenges Boulder County's discriminatory and unconstitutional obstruction

of NorthStar's efforts to open and operate a state-licensed group care home for individuals

protected by the FHA within the boundaries of Boulder County.

## INTRODUCTION

1.      Boulder County's Land Use Code treats group homes for individuals recovering from drug and alcohol addictions—an indisputably protected class under the federal Fair Housing Act, as amended—differently from single family residences.

2.      Specifically, whereas individuals who fit within Boulder County's definition of a "family" may immediately use a dwelling, group homes for protected individuals may not use the dwelling until going through a lengthy and burdensome "special use review" process.

3.      Aside from depriving protected individuals the opportunity to live in the group home for several months, the special use review process includes several "publication" requirements that result in publicly stigmatizing the group home's residents in front of the entire Boulder County community.

4.      Under well-settled federal precedent across multiple jurisdictions, Boulder County's Land Use Code is facially discriminatory and preempted by the Fair Housing Act.

5.      Further, although NorthStar gave it two opportunities to do so, Boulder County refused to make reasonable accommodations, as required by the Fair Housing Act, which would have alleviated the scope of the damage caused by the discriminatory nature of the Land Use Code.

6.      NorthStar therefore has been unable to allow protected individuals to reside in the property it purchased in Boulder County during the pendency of the special use review process.

7.      Because NorthStar's other group homes are full, it has already had to turn away at least 15 to 20 individuals seeking to advance their recovery in a group home.

8.      The harm caused by turning away such individuals is not theoretical:  they are at a demonstrably higher risk of severe relapse and fatal overdose.

9.      Boulder County's Land Use Code is therefore discriminating against individuals protected by federal law in a manner that subjects them to an increased risk of harm and even death.

10.     Upon information and belief, Boulder County is about to begin the public notification phase of the special use review process, including publicizing to the entire Boulder County community the location, identity and nature of the group home.

11.     If Boulder County does so, NorthStar and its federally-protected residents will face an organized opposition from certain portions of the community in a manner that will permanently stigmatize NorthStar and the residents.

12.     NorthStar therefore has no choice but to bring this action for declaratory and injunctive relief to end the discrimination, as well as damages caused by Boulder County's past and ongoing discriminatory practices.

## **PARTIES**

13.     Plaintiff NorthStar Transitions, LLC is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at 2595 Canyon Blvd, Suite 460, Boulder, Colorado 80302.

14.     Plaintiff 1236 Ridge Road, LLC is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at 2595 Canyon Blvd, Suite 460, Boulder, Colorado 80302.

15.     Defendant Boulder County, State of Colorado is a political subdivision of the State of Colorado.  Boulder County is responsible for the acts of its agents and employees, including Boulder County's Land Use Department, Planning Commission, Board of County Commissioners ("BOCC") and Zoning Department.  Boulder County is also responsible for the enactment, enforcement and application of Boulder County's Land Use Code (the "Code").

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 3613, 42 U.S.C. § 12133, and 29 U.S.C. § 794 because Plaintiffs state claims arising under the laws of the United States, specifically the Fair Housing Act, the ADA, the Rehabilitation Act, and the Equal Protection and Due Process Clauses of the United States Constitution.

17.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' federal and state law claims form part of the same case or controversy under Article III of the United States Constitution.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant and its officers are subject to personal jurisdiction within the District of Colorado and because the events which give rise to this action took place within, and the subject property is located within, the District of Colorado.

## GENERAL ALLEGATIONS

**A.     Federal Law Prohibits County Zoning Ordinances from Discriminating Against Group Homes for Individuals Recovering from Addiction.**

19.     The Fair Housing Amendments Act of 1988 (the "FHA"), Pub.L. No. 100-430, 102 Stat. 1619, *codified at* 42 U.S.C. § 3601 *et seq.*, extended the protection of the Fair Housing Act to handicapped individuals.

20.     Under the FHA, a person is subject to a "handicap" if he or she has a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment."  42 U.S.C. § 3602(h).

21.     Federal regulations implementing the FHA have expressly recognized that the term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)."  24 C.F.R. § 100.201.

22.     Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or otherwise made available.  42 U.S.C. § 3604(f)(1).

23.     Discrimination specifically includes the refusal to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford an equal opportunity to use or enjoy a dwelling.  42 U.S.C. § 3604(f)(3)(B).

24.     The FHA also makes it unlawful to coerce, intimidate, or retaliate against someone for having exercised or seeking to exercise rights protected by the FHA.  42 U.S.C. § 3617.

25.     If a zoning ordinance is found to be discriminatory, a court can invalidate it under the doctrine of preemption, as well as grant any equitable relief appropriate, including "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate.)" 42 U.S.C. § 3613(c).

26.     The ADA requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any municipal entity.  42 U.S.C. § 12132.

27.     The federal regulations implementing the ADA prohibit a public entity from administering a licensing program or establishing certain requirements for activities of a licensee in a manner that subjects qualified disabled individuals to discrimination on the basis of their disability.  28 C.F.R. § 35.130(6).

28.     The federal regulations implementing the ADA also make it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities, denying them the benefits of certain locations, or otherwise subjecting them to discrimination.  28 C.F.R. § 35.130(4)(I).

29.     The Rehabilitation Act makes it unlawful for recipients of Federal funding, including local governments, to discriminate against any qualified individual on the basis of his or her disability.  29 U.S.C. § 794.

**B.      Boulder County's Code Imposes Restrictions to the Availability of Group Homes for Individuals with Protected Disabilities.**

30.      Boulder County's Land Use Code (the "Code") sets forth, among other things, the zoning regulations governing "all land within the unincorporated areas of Boulder County."

31.      The property at issue in this case is located in the "Forestry District."

32.      The Code authorizes a variety of uses for property located in the Forestry District, including two residential uses:  "Group Care or Foster Home" and "Single Family Dwelling."

33.      The Code defines a "Group Care or Foster Home" as "[a] facility which provides 24-hour care or supervision of persons who are not related by blood, marriage, or adoption, to the owner, operator, or manager thereof, and who do not meet the definition of family under this Code."  Ex. 1 (Code) art. 4-511(B)(1).

34.      A "family" is defined as:

    A.      An individual, or two or more individuals related by blood, marriage, or adoption, and not more than two roomers or boarders; or

    B.      Two adults and any of their lineal descendants; or

    C.      A group of not more than three unrelated individuals; and who are living together as a single housekeeping unit.

Ex. 1 (Code) art. 18-148.

35.      Property located in the Forestry District can be used as a single family dwelling "by right," but can only be used as a group care home only after a "special use review."  *See* Ex. 1 (Code) art. 4-511(B).

36.    The purpose of a special use review is "to determine the compatibility of the use with the site and surrounding land and uses and the adequacy of services."  Ex. 1 (Code) art. 3-100(A)(14).

37.    As illustrated in the table below, "Group Care or Foster Home" is the only category of residential use which the Code requires special use review.  Ex. 1 (Code) art. 4-511.

## Use Tables • 4-511 Residential Uses

| | | Forestry | Agricultural | Rural Residential | Estate Residential | Suburban Residential | Multifamily | Manufactured Home | Transitional | Business | Commercial | Light Industrial | General Industrial | Mountain Institutional |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | Boarding House | | | | | | ✔ | | ✔ | ✔ | ✔ | | ✔ | |
| B | Group Care or Foster Home | S | S | S | S | S | S | S | S | S | | | | S |
| C | Manufactured Home Park | | | | | | | ✔ | | | | | | |
| D | Multifamily Dwelling | | | | | | ✔ | | ✔ | | | | | |
| E | Single Family Dwelling | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |

| Use Table 4-511 Legend: | |
|---|---|
| ✔ | Uses Permitted by Right |
| ✔+ | Uses Permitted by Right on Unsubdivided Land |
| S | Uses Permitted by Special Review |
| S+ | Uses Permitted by Special Review on Unsubdivided Land |
| L | Uses Permitted by Location & Extent Review |
| A | Uses Permitted by Special Authorization of the Building Official |
| I | Uses Permitted by Limited Impact Special Review |
| I+ | Uses Permitted by Limited Impact Special Review on Unsubdivided Land |
| R | Uses Permitted by Review of Areas and Activities of State Interest |

38.    The special use review process is complex, but generally entails:

a.    A pre-application conference with a county planner;

b.    The submission of special use application;

c.    Referral of the application to "adjacent and/or nearby property owners and affected agencies";

d.    Staff review by the county zoning department;

   e.  At least two public hearings before the Boulder County Planning Commission (the "Planning Commission") and the Board of County Commissioners (the "BOCC") (the "Public Hearings"); and

   f.  Satisfaction of any post-approval requirements.

*See* Ex. 1 (Code) art. 3-200(A).

  39.  Completing the special use review process is an expensive and time consuming undertaking:  there is a minimum fee of $1,450.00 just to submit an application, and the process takes, at a minimum, four to six months.

  40.  To complete the application, the applicant must provide, among other things, a detailed description of the project, a vicinity map, site plan, development report, referral packets, landscape plans, and title information.  Ex. 1 (Code) art. 3-202(A)(2).

  41.  A "referral packet" is sent to neighbors of the property and includes various details about the proposal, including the name of the owner and proposed use (the "Neighbor Notification").  Ex. 1 (Code) art. 3-204(B).

  42.  Upon information and belief, once the zoning department staff holds an initial internal meeting and determines that it is complete, the Neighbor Notification is sent and the public hearing before the Planning Commission (the "Initial Public Hearing") is scheduled.

  43.  Notice of the Initial Public Hearing must be provided "in a newspaper of general circulation in Boulder County at least seven days prior to the hearing date" and by first class mail to "adjacent and/or nearby property owners."  Ex. 1 (Code) art. 3-205(B)(2)(a) and (d).

  44.  The Code also requires the applicant to post in a conspicuous manner notice of the Initial Public Hearing on a sign on the subject property at least twelve days prior to the Initial

Public Hearing—and the sign cannot be taken down until Boulder County makes a final determination on the application.  Ex. 1 (Code) art. 3-205(B)(2)(b).

45.     After the Initial Public Hearing, the Planning Commission must then make a recommendation to the BOCC, which holds another public hearing (the "Second Public Hearing") before deciding whether the grant or deny the application.  Ex. 1 (Code) art. 3-205(C)(1)(a).

46.     Like the Planning Commission, the BOCC must post notice of the Second Public Hearing "in a newspaper of general circulation in Boulder County" and provide individual notice to "adjacent and/or nearby property owners."  Ex. 1 (Code) art. 3-205(C)(2)(a) and (b).

47.     After the Second Public Hearing, the BOCC must approve or deny the application.  If the BOCC's approval is conditional, the applicant must satisfy all of the conditions before a special use permit will be issued.  Ex. 1 (Code) art. 3-206(A).

48.     Individuals who fit the Code's definition of a "family" do not have to comply with any of the requirements of the special use review process.

49.     Thus, under the Code, a group home where individuals recovering from an addiction live is treated differently from a house where non-disabled individuals live.

**C.     Boulder County Refuses to Make Reasonable Accommodations that Would Allow NorthStar to Provide Group Housing to Protected Individuals.**

50.     NorthStar owns and operates multiple licensed and accredited rehabilitation homes in Colorado that provide housing for individuals recovering from drug and alcohol addiction.

51.     The occupants of the NorthStar's group homes live similar to the manner in which related individuals live—among other things, they cook together, eat together, clean up after

10

themselves, and, most importantly, consult and converse with each other about similar life experiences, without the fear of being judged.

52.     By providing this sort of communal living environment that is free of stigma, NorthStar's group homes help handicapped individuals continue and advance in their recovery from drug and alcohol addictions.

53.     On or around November 3, 2017, Plaintiff 1236 Ridge Road purchased a large residential dwelling located at 1236 Ridge Road, Ward, Colorado 80481 (the "Property") in Boulder County.

54.     The 6,285 square foot Property sits on 53 acres of land zoned "Forestry" and is accessible only by a 2.5 mile long gravel driveway.  Trees surrounding the Property completely isolate it from properties nearby.

55.     The Property—which has 5 large bedrooms, 3 full baths, 2 half baths, a chef's kitchen, and multiple living areas with views overlooking the mountains—was previously used as a single family home.

56.     Plaintiff 1236 Ridge Road purchased the Property for the sole purpose of having Plaintiff NorthStar Transitions operate it as a group home to house individuals who are recovering from drug and alcohol addiction (the "Protected Residents").

57.      As with NorthStar's other group homes, at the Property, Protected Residents will cook together, eat together, clean up after themselves, and, most importantly, consult and converse with each other about similar life experiences, without the fear of being judged.

58.     To obtain a license for use of the Property as a rehabilitation home, NorthStar must submit to the Colorado Office of Behavioral Health a "Zoning Use Confirmation" form signed by the Boulder County Zoning Department.

59.     On September 29, 2017, NorthStar met in person with a planner from the Zoning Department and requested a signed Zoning Use Confirmation form.

60.     The Zoning Department denied NorthStar's request because the Code classifies NorthStar's proposed use of the Property as a group care facility that must go through the special use review process.

61.     On October 7, 2017, NorthStar wrote a letter to Boulder County's Land Use Planner providing additional details about NorthStar's intended use of the Property and requesting a reasonable accommodation from the special use review process.

62.     In the October 7 letter, NorthStar also raised concerns that the Code and Boulder County's application of the Code amounted to discrimination against disabled individuals protected by the FHA.

63.     On October 27, 2017, Land Use Department Director, Dale Case, wrote a letter to NorthStar denying its request for a reasonable accommodation without further explanation.

64.     To avoid delay, NorthStar agreed to submit a special use application, but it reserved the right to contest Boulder County's past, continuing, and future violations of the FHA.

65.     On November 17, 2017, NorthStar wrote another letter to the Land Use Department, this time seeking a reasonable accommodation from specific components of the special use review process, including the Neighbor Notification and the Public Hearings.

66.     NorthStar requested reasonable accommodations from these specific requirements because, in NorthStar's experience, such "publication" requirements result in organized opposition from the community that stigmatizes its disabled residents.

67.     On November 27, 2017, Director Case denied NorthStar's request for a reasonable accommodation, again without providing any explanation for the denial.

68.     Upon information and belief, Boulder County is holding the initial internal meeting regarding NorthStar's application on December 20, 2017 (the "December 20 Meeting").

69.     Upon information and belief, after the December 20 Meeting, Boulder County will send out the Neighbor Notification and set the Initial Public Hearing.

70.     Once Boulder County notifies the neighborhood that NorthStar intends to use the Property as a group home, NorthStar and the Protected Residents will almost certainly be met with an outpouring of hostility from a certain portion of the community due to unsubstantiated fears or prejudices against the handicapped and disabled residents of group care homes.

**D.     Boulder County's Discriminatory Code and Practices Are Causing Irreparable Harm and May Result in the Death of Protected Residents.**

71.     Currently, during this special use review process, individuals who are recovering from drug and alcohol addiction are unable to reside in the Property.

72.     Because NorthStar's other residential properties are full, NorthStar has been forced to turn away at least 15 to 20 Protected Residents who were seeking to advance their recovery in a group home.

73.     NorthStar would have been able to place these Protected Residents in the Property if the Code and Boulder County were not requiring NorthStar to go through the special use review process.

13

74.     As has been recognized by federal and state government officials, there is currently an opioid epidemic plaguing the United States.

75.     In Colorado, the annual rate of death from drug overdose is "significantly higher than the national rate."  C.R.S. 27-80-118 (1)(a).

76.     "Colorado's drug overdose mortality rate has increased by five hundred percent since 2014."  C.R.S. 27-80-118 (1)(d).

77.     "Colorado and other states in the region have the highest death rates attributable to alcohol in the country, and approximately eighteen percent, or one out of every five, of all Colorado adults engaged in heavy or binge drinking monthly."  C.R.S. 27-80-118 (1)(e).

78.     Because of the ongoing drug and alcohol epidemic, NorthStar is almost certain to be forced to turn away other Protected Residents who are seeking to advance their recovery in a group home during the pendency of the special use review process.

79.     Treatment like that provided by NorthStar is effective:  Millions of individuals who suffered from a previous substance abuse disorder are in remission and living productive lives.

80.     However, the effectiveness of treatment is diminished the longer the individual is exposed to cues in their lives that may trigger relapse.

81.     Individuals who are turned away from group homes such as NorthStar's frequently have no other substance-free living options.

82.     Individuals who are turned away from group homes such as NorthStar's have a higher probability to relapse and use alcohol or drugs after their attempt to secure substance-free living has been denied.

83.     The relapse for individuals who are turned away from group homes such as NorthStar's is frequently severe, and such individuals are therefore at a higher risk of a fatal overdose.

84.     By requiring NorthStar to go through the special use review process and refusing to make reasonable accommodations, Boulder County is forcing NorthStar to turn away individuals recovering from drug and alcohol addiction—and is therefore putting Protected Residents at a higher risk of relapse and even death.

## COUNT I
### (Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1))

85.     NorthStar incorporates all other allegations in this Complaint.

86.     The Property is a "dwelling" under the FHA.  *See* 42 U.S.C. § 3602(b).

87.     NorthStar seeks to house Protected Residents in the Property.

88.     The Protected Residents are all subject to a "handicap" under the FHA.  *See* 42 U.S.C. § 3602(h).

89.     The Code violates 42 U.S.C. § 3604(f)(1) because it discriminates against the Protected Residents on the basis of their handicapped status.

90.     The Code is discriminatory on its face.

91.     The Code does not benefit people with disabilities and it is not tailored to the Property in a manner that would address any legitimate County concerns.

92.     Boulder County's enforcement of the Code made the Property unavailable to Protected Residents on the basis of disability in violation of the Fair House Act.

93.     NorthStar and the Protected Residents are aggrieved persons as defined by 42 U.S.C. §§ 3602(d) and (i), have been injured by Boulder County's unlawful conduct, and have suffered and continue to suffer damages as a result.

94.     Boulder County's unlawful conduct was intentional, willful, and made in disregard of the rights of others.

## COUNT II
### (Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B))

95.     NorthStar incorporates all other allegations in this Complaint.

96.     On October 7, 2017, NorthStar sent a letter to Boulder County formally requesting a reasonable accommodation from the special use review process on the grounds that the Code, which requires group care homes to undergo a special use review but allows single family dwellings as a matter of right, is discriminatory and violates the FHA.

97.     On October 27, 2017, Boulder County denied NorthStar's request for a reasonable accommodation without addressing any of the concerns NorthStar raised in the October 7 letter.

98.     Boulder County refused to provide NorthStar a reasonable accommodation from the Code's requirement that group homes submit to the special use review process and has continued to enforce that prohibition.

99.     On November 17, 2017, NorthStar wrote another letter to Boulder County, this time seeking a reasonable accommodation from specific requirements of the special use process, including the Neighbor Notification requirement and the Public Hearings.

100.    On November 27, 2017, Boulder County denied NorthStar's request for a reasonable accommodation, again without providing any explanation for the denial.

101.     A reasonable accommodation is necessary to afford the Protected Residents equal opportunity to use and enjoy the Property.

102.     Boulder County's denial of NorthStar's request for a reasonable accommodation was intentional, willful, and made in disregard of the rights of others.

103.     As a result of Boulder County's conduct, NorthStar and the Protected Residents have been and continue to be damaged.

**COUNT III**
**(Violation of the Fair Housing Act, 42 U.S.C. § 3617)**

104.     NorthStar incorporates all other allegations in this Complaint.

105.     The Code unlawfully coerces, intimidates, threatens, and interferes with NorthStar's and the Protected Residents' ability to exercise and enjoy rights granted and protected under the FHA by requiring group homes to submit to an intrusive, time consuming, and expensive special use review process that non-disabled residents living in a single family dwelling are not required to endure.

106.     On October 7, 2017, NorthStar sent a letter to Boulder County formally requesting a reasonable accommodation from the special use review process on the grounds that the Code, which requires group care homes to undergo a special use review but allows single family dwellings as a matter of right, is discriminatory and violates the FHA.

107.     On October 27, 2017, Boulder County denied NorthStar's request for a reasonable accommodation without addressing any of the concerns NorthStar raised in the October 7 letter.

108.     On November 17, 2017, NorthStar sent another letter to Boulder County formally requesting a reasonable accommodation from specific aspects of the special use review process, including the Neighbor Notification and the Public Hearings.

17

109.     On November 27, 2017, Boulder County denied NorthStar's request for a reasonable accommodation related to the specific provisions of the special use review process.

110.     By enforcing the Code and denying NorthStar's requests for reasonable accommodations, Boulder County coerced, intimidated, threatened, and interfered with NorthStar's and the Protected Residents' ability to exercise and enjoy the rights granted and protected by the FHA.

111.     Boulder County's unlawful conduct was intentional, willful, and made in disregard of the rights of others.

112.     As a result of Boulder County's conduct, NorthStar and the Protected Residents have been and continue to be damaged.

## COUNT IV
### (Violation of the Americans with Disabilities Act, 42 U.S.C. § 12132)

113.     NorthStar incorporates all other allegations in this Complaint.

114.     NorthStar is involved in the process of providing housing to people with disabilities as defined in 42 U.S.C. § 12102(2).

115.     Boulder County is a public entity within the definition of 42 U.S.C. § 12131(1).

116.     The actions of Boulder County to exclude NorthStar's use of the Property as a group home violates NorthStar's and the Protected Residents' rights under the ADA and regulations promulgated thereunder by:

(a)     Denying the Protected Residents the opportunity to participate in or benefit from the supportive housing program NorthStar offers;

(b)     Using and administering land use ordinances with the purpose and effect of subjecting the Protected Residents to discrimination based on their disability;

18

     (c)     Subjecting the Protected Residents to discrimination based on their disability;

     (d)     Denying the Protected Residents the opportunity to participate in a program in the most integrated setting appropriate to their needs in a manner discriminatory against the Protected Residents and different from the opportunities presented to non-disabled individuals; and

     (e)     Utilizing licensing and permit requirements to enforce the Code to deny the Protected Residents the enjoyment of rights, privileges, advantages, and opportunities enjoyed by non-disabled individuals in a discriminatory manner.

117.    Boulder County has perpetrated these actions by enforcing the Code, which is discriminatory on its face.

118.    NorthStar requested a reasonable accommodation from the Code, but Boulder County denied the requests.

119.    As a result of Boulder County's conduct, NorthStar and the Protected Residents have been and continue to be damaged.

## COUNT V
### (Violation of the Rehabilitation Act, 29 U.S.C. § 794)

120.    NorthStar incorporates all other allegations in this Complaint.

121.    Upon information and belief, Boulder County is the recipient of Federal financial assistance.

122.    The facts that support Count IV also establish that Boulder County violated the Rehabilitation Act.

## COUNT VI
### (Equal Protection Violation –United States Constitution)

123.    NorthStar incorporates all other allegations in this Complaint.

124.    NorthStar brings this claim against Defendant Boulder County pursuant to 42 U.S.C. § 1983 for violation of the equal protection of law guaranteed by the Fourteenth Amendment of the United States Constitution.

125.    Under the Code, group care and foster homes are the only residential uses of property that require special use review.

126.    Under the Code, a property can be used as a single family dwelling as a matter of right.

127.     The Code treats group care homes and single family dwellings differently because of unsubstantiated fears or irrational prejudices against the handicapped and disabled residents of group care homes.

128.    By enforcing the Code, Boulder County's actions, taken under color of law, are arbitrary, capricious and unreasonable, discriminate against disabled and handicapped persons, and violate the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

129.    Boulder County's conduct was intentional, willful, and made in disregard of the rights of others.

130.    As a result of Boulder County's unlawful conduct, NorthStar and the Protected Residents have been and continue to be damaged.

20

## COUNT VII
### (Equal Protection Violation –Colorado Constitution)

131.    NorthStar incorporates all other allegations in this Complaint.

132.    The facts that support Count VI also establish that Boulder County violated NorthStar's and its clients' equal protection rights guaranteed by Article II, Section 25 of the Constitution of the State of Colorado.

## COUNT VIII
### (Due Process Violation – United States Constitution)

133.    NorthStar incorporates all other allegations in this Complaint.

134.    NorthStar brings this claim against Defendant pursuant to 42 U.S.C. § 1983 for violation of the substantive due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

135.    Under the Code, group care and foster homes are the only residential uses of property that require special use review.

136.    Under the Code, a property can be used as a single family dwelling as a matter of right.

137.     The Code treats group care homes and single family dwellings differently only because of unsubstantiated fears or irrational prejudices against the handicapped and disabled residents of group care homes.

138.    When NorthStar requested a reasonable accommodation from the special use review process, including individual components of the special use review process that are particularly damaging to NorthStar and the Protected Residents, Boulder County denied the request.

139.    By requiring NorthStar to go through the special use review process and refusing to make a reasonable accommodation, Boulder County is forcing NorthStar to turn away individuals recovering from drug and alcohol addiction—and is therefore putting protected individuals at a higher risk of relapse and even death.

140.    By enforcing the Code and denying NorthStar's request for a reasonable accommodation, Boulder County's actions, taken under color of law, are arbitrary, capricious and unreasonable, discriminate against disabled and handicapped persons.

141.    Boulder County's conduct was intentional, willful, and made in disregard of the rights of others.

142.    By depriving disabled and handicapped individuals access to NorthStar's state-licensed group home, which places protected individuals at a higher risk of relapse and even death, Boulder County engaged in conduct that shocks the judicial conscience.

143.    As a result of Boulder County's unlawful conduct, NorthStar and its clients have been and continue to be damaged.

## COUNT IX
### (Due Process Violation – Colorado Constitution)

144.    NorthStar incorporates all other allegations in this Complaint.

145.    The facts that support Count VIII also establish that Defendant Boulder County has violated NorthStar's and the Protected Residents' substantive due process rights guaranteed by Article II, Section 25 of the Constitution of the State of Colorado.

## COUNT X
### (Violation of C.R.S. § 30-28-115)

146.    NorthStar incorporates all other allegations in this Complaint.

147.    NorthStar seeks to establish a state-licensed group home for the exclusive use of persons with behavioral health disorders, which Colorado recognizes as a matter of statewide concern.

148.    Boulder County violated the C.R.S. 30-28-115(b.5) by enforcing the Code to preclude NorthStar from operating the Property as a state-licensed group home for behavioral health disorders.

149.    As a result of Boulder County's unlawful conduct, NorthStar and the Protected Residents have been and continue to be damaged.

WHEREFORE, NorthStar prays that this Court grant it relief, including as follows:

a.    A declaration that the Boulder County Land Use Code is discriminatory, on its face and as applied to NorthStar, and violates the FHA, the ADA, the Rehabilitation Act, the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution, the Equal Protection and Due Process protections guaranteed by Article II, Section 25 of the Colorado Constitution, and Colorado Revised State § 30-28-115;

b.    A temporary restraining order and preliminary injunction that: (1) enjoins Boulder County from taking any action or enforcing any code or ordinance that obstructs the right of NorthStar or the Protected Residents to immediately occupy, use, and enjoy the Property; and (2) requires Boulder County to delivery to NorthStar an executed copy of the Zoning Use Confirmation form;

c.   A permanent injunction that enjoins Boulder County from taking any action or enforcing any code or ordinance that obstructs the right of NorthStar or the Protected Residents to immediately occupy, use, and enjoy the Property;

d.   Compensatory, statutory, and punitive damages, the amount of which to be proven at trial;

e.   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), 42 U.S.C. § 3613(c), 42 U.S.C. § 12205, and 29 U.S.C. § 794a;

f.   Pre- and post-judgment interest; and

g.   Such other and additional relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury on all issues triable by jury in this case.

Dated this 15th day of December, 2017.
Denver, Colorado

Respectfully submitted,


_s/     Gregory P. Szewczyk_
Gregory P. Szewczyk
J. Matthew Thornton
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO  80202-5596
303.299.2400
szewczykg@ballardspahr.com
thorntonj@ballardspahr.com

*Attorneys for Plaintiff*


Plaintiffs:        NorthStar Transitions, LLC
                   1236 Ridge Road, LLC
                   2596 Canyon Blvd., Suite 460
                   Boulder, CO 80302

## DECLARATION OF MICHAEL FERRELL

Pursuant to 28 U.S.C. § 1746, under penalty of perjury, Michael Ferrell hereby declares that he has examined this Verified Complaint and exhibit thereto, and, to the best of his knowledge and belief, the facts asserted therein are true, correct, and complete.

DATED this 15th day of December, 2017.

Respectfully submitted,

_s/ Michael Ferrell_
Michael Ferrell
Executive Director, NorthStar Transitions, LLC
President, 1236 Ridge Road, LLC